**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN: 347431)
pamela@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Maria Corona

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARIA CORONA, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**RAW SUGAR, LLC and SUGAR BUYER, LLC,**<br><br>**Defendants.** | **Case No.:** ‛25CV1222 BAS AHG<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>3) **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*;**<br>4) **BREACH OF EXPRESS WARRANTY**<br>5) **UNJUST ENRICHMENT;**<br>6) **NEGLIGENT MISREPRESENTATION; AND,**<br>7) **INTENTIONAL MISREPRESENTATION.**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1.     Plaintiff Maria Corona ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint ("Complaint") for damages, injunctive relief, and any other available legal or equitable remedies resulting from the unlawful actions of Defendants Raw Sugar, LLC and Sugar Buyer, LLC, doing business as Raw Sugar (collectively "Raw Sugar" or "Defendant").

2.     This Complaint concerns the illegal, unfair, and deceptive labeling, marketing, and sale of Raw Sugar's personal care products, including: (a) the representation that Raw Sugar's products are made with, contain, and deliver "nutrient dense cold press extracts" produced using allegedly "patented" "Cold Press Technology," along with the purported benefits of such technology; (b) the labeling of certain products with ingredients that are not, in fact, present; and (c) the representation that the products are manufactured in the United States, without clear or adequate qualification regarding the inclusion of foreign ingredients and components, as required by federal and state laws, rules, and regulations.

3.     The unlawfully and deceptively represented products are sold through various channels, including, but not limited to, direct-to-consumer sales on the Defendant's website, third-party platforms such as Amazon.com ("Amazon"), and third-party merchants operating brick-and-mortar stores, as well as websites, including, but not limited to, Albertsons, Target and elsewhere.

4.     Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

5.     In the fiercely competitive personal care industry, some companies attempt to gain an unfair advantage by misrepresenting the nature, quality, and other characteristics of their products—both to consumers and to retailers. As detailed

herein, Defendant promotes its products as possessing specific attributes that they, in reality, do not have.

6. Specifically, Defendant represents that its products are made using certain ingredients and proprietary processes that, in reality, are not used in—or in the production of—the products. Defendant goes so far as to claim that it has ***"patented"*** these processes, further misleading consumers and retailers alike.

7. Additionally, Defendant prominently advertises certain ingredients on the Principal Display Panel ("PDP") of specific products, despite those ingredients being entirely absent from the actual formulation. For instance, the product purchased by Plaintiff claims to contain "Sweet Almond Milk," **when in fact it contains no sweet almond milk whatsoever**.

8. Furthermore, Defendant labels all of its products with the express and unqualified statement, "Crafted with LOVE in Southern California," thereby representing that the products are made in the United States using domestic ingredients and components. In reality, however, Defendant's products are manufactured using numerous foreign-sourced ingredients and components, rendering this claim unfair and deceptive.

9. Numerous federal and state laws, rules, and regulations govern the proper labeling of consumer products, including cosmetics.[1]

10. For example, the Federal Food, Drug, and Cosmetic Act ("FDCA"), and various state laws[2] that generally align with the FDCA govern the aspects of cosmetic labeling discussed herein. These laws reflect a fundamental principle: **consumers have the right to know what they are purchasing**.

---

[1] Under federal law, Defendant's products fall within the definition of "cosmetics" as set forth in 21 U.S.C. § 321(i). ("The term "cosmetic" means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles intended for use as a component of any such articles; except that such term shall not include soap.")

[2] *See* Cal. Health & Safety Code §§ 111730, 111760, 111765, 111770

11.    When companies misrepresent the presence of key ingredients, exaggerate the nature and benefits of their formulations, or falsely claim unique differentiation or origin, they violate fundamental consumer protection laws. Such deceptive practices erode consumer trust, distort fair competition, and confer an unjust advantage in the marketplace.

12.    Under both the FDCA and California law, a cosmetic is considered misbranded if its labeling is false or misleading in *any particular*.[3]

13.    Defendant markets and sells its products as containing "nutrient dense" ingredients and "cold press extracts," purportedly produced using proprietary "technology" described as "patented" or similar terminology. Through these representations, Defendant expressly warrants that its products contain gently processed, premium ingredients and are manufactured using methods not available in comparable products. In truth, however, the products do not contain the advertised "Nutrient Dense Cold Press Extracts" (also referred to as "NDCP Extracts"), nor are they processed in any materially different or superior manner than other similar products on the market. These representations are false, misleading, and deceptive, in violation of federal and California law.

14.    Furthermore, Defendant's products are labeled as "Crafted with LOVE in Southern California" without any qualification, despite containing foreign ingredients and/or components. This practice violates federal regulations that require clear and adequate qualification of the foreign ingredients and components used in a prodct when U.S. origin claims are made.

15.    The Moisture Smoothie Shampoo (the "Product") purchased by Plaintiff was falsely represented as containing "Coconut + Agave + Sweet Almond *Milk*" (emphasis added), being made with NDCP Extracts and being "Crafted with LOVE in Southern California." These representations are demonstrably false, as detailed further herein.

---

[3] *See* 21 USC § 362(a) and Cal. Health & Safety Code § 111730.

16.     As stated by the California Supreme Court in *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328-29 (2011):

> **Simply stated: labels matter.** The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source. . .In particular . . . **the 'Made in U.S.A.' label matters**. A range of motivations may fuel this preference, from desire to support domestic jobs or labor conditions, to simply patriotism. The Legislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent 'Made in America' representations. (Cal. Bus & Prof. Code section 17533.7; see also Cal. Civ. Code § 1770, subd. (a)(4) (prohibiting deceptive representations of geographic origin)). The objective of section 17533.7 'is to protect consumers from being misled when they purchase products in the belief that they are advancing the interest of the United States and the industries and workers. . .' (emphasis added).

17.     Defendant labels and markets specific products with express representations that they contain certain ingredients—including, but not limited to, sweet almond milk—on the PDP or in another prominent and conspicuous location on the packaging, as well as in advertising and marketing materials. These claims appear on numerous products manufactured, marketed, or sold by Defendant, including the Product purchased by Plaintiff, despite the complete absence of the represented ingredient(s).

18.     Additionally, all of Defendant's products are labeled and/or marketed with the representations that they are made with NDCP Extracts (or similar language) and "Crafted with LOVE in Southern California." These claims appear on all products manufactured, marketed, or sold by the Defendant, including the product purchased by Plaintiff, despite the inclusion of numerous foreign ingredients and the lack of NDCP Extracts, as discussed herein.

19.     Defendant's conduct of labeling, marketing and selling deceptively labeled products bearing the aforementioned misrepresentations violates: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (3) California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq.*; and constitutes (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation.

20.     Additionally, Defendant's conduct of labeling, marketing and selling deceptively labeled products bearing the representation that such products contain NDCP Extracts or certain claimed ingredients (instead of disclosing the true ingredient contained therein) and/or are "Crafted with LOVE in Southern California" without qualification also violate the FDCA, and 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule") and California laws.

21.     This conduct caused Plaintiff, and other similarly situated consumers, damages, and requires restitution and injunctive relief to remedy and prevent future harm.

22.     In addition to the missing ingredient ("MI") claims on and regarding the Product purchased by Plaintiff, several of Raw Sugar's other products—including, but not limited to, Multi-Miracle Hair Mist, Mighty Curls Hair Masque, Healing Power Hair Masque, Kid's Strong + Shiny Leave-In Conditioning Cream, Simply Body Wash for Sensitive Skin, Moisture Loving Lotion, Eco Body Bar, Sugar Scrub, Daily Micro Scrub Salt Polish, Whipped Scrub for Sensitive Skin, Simply Hand Wash and Lip Balm, (together with the Product purchased by Plaintiff, the "MI Products")—also display the same unlawful, unfair, and deceptive MI claims, while omitting the very ingredients they purport to contain.

23.     Furthermore, in addition to the NDCP Extracts misrepresentation and unqualified "Crafted with LOVE in Southern California " misrepresentations on and regarding the Product purchased by Plaintiff, all of Raw Sugar's other skincare

products—including, but not limited to, those listed in **Exhibit A** and featured on Raw Sugar's website (together with the MI Products, the "Class Products")—are also labeled and/or marketed with the same NDCP Extracts claims (or associated claims) and the same unqualified "Crafted with LOVE in Southern California" misrepresentations.

## JURISDICTION AND VENUE

24.    This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity because Plaintiff is a citizen of the State of California, Defendant Raw Sugar, LLC is a Delaware limited liability company with its headquarters and principal place of business in California,[4] and Defendant Sugar Buyer, LLC is a Delaware limited liability company with its headquarters and principal place of business in Florida;[5] (2) the amount in controversy in this matter exceeds $5 million, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

25.    Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the San Diego County, California, which is within this judicial district; (ii) a substantial part of the conduct complained of herein occurred within this judicial district; (iii) Defendant conducted business within this judicial district at all relevant times.

## PARTIES

26.    Plaintiff is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the San Diego County, California.

---

[4] According to the California Secretary of State website.

[5] According to the August 15, 2024 Statement of Information filed by Defendant Raw Sugar, LLC with the California Secretary of State, Sugar Buyer, LLC is identified as a "Manager or Member" of Raw Sugar, LLC and is listed at an address in Florida. Although Sugar Buyer, LLC is registered with the Delaware Secretary of State, it is not registered with the Florida Secretary of State.

27.    Defendant Raw Sugar, LLC is a limited liability company that is organized and exists under the laws of the State of Delaware, with its principal place of business within the State of California located at 1640 South Sepulveda Boulevard, Suite 204, Los Angeles, California 90025.

28.    Defendant Sugar Buyer, LLC is a limited liability company that is organized and exists under the laws of the State of Delaware, with its principal place of business within the State of Florida located at 21500 Biscayne Boulevard, Suite 600, Aventura, Florida 33180.

29.    Defendant is a manufacturer, distributor and seller of personal care products that conducts business: a) direct-to-consumer through its website and its Amazon store; b) through the websites of third-party vendors, including, but not limited to, Walmart.com, CVS.com, Walgreens.com, Target.com, Kohls.com as well as others; and c) distributes its products to be sold in brick and mortar stores including, but not limited to, Walmart, CVS, Walgreens, Target, Albertsons and others.

30.    Plaintiff alleges that at all relevant times Defendant conducted business within the State of California, in the County of San Diego, and within this judicial district.

31.    Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

## NATURE OF THE CASE

32.    Founded in 2014, Defendant has rapidly grown into one of the leading personal care companies in the United States. By 2022, Defendant had already exceeded $100 million in annual sales, reflecting its significant market presence and consumer reach.[6]

---

[6]    *See*    https://www.beautyindependent.com/how-raw-sugar-living-100m-brand-without-e-commerce-website/ (Although this article reports that Defendant generated annual revenues exceeding $100 million, that figure reflects primarily wholesale sales to retailers—meaning the actual amount paid by consumers at retail was significantly higher.)

33.     Defendant markets and sells a wide portfolio of personal care products through multiple distribution channels including, but not limited to, its own website[7], its Amazon store[8], through third-party retailers online as well as in brick and mortar stores.

34.     Building on its success, Defendant secured a strategic investment from WM Partners ("WMP") in 2021.[9] WMP is a prominent investment firm with over $1 billion deployed almost exclusively in the health, wellness and personal care sectors.[10]

35.     Given its long history in the consumer products industry, along with the vast resources and operational sophistication—including those of WMP—and the rigorous due diligence process, including formula and marketing claims review, that WMP would have undertaken before investing in a company like Raw Sugar, it is difficult to understand how the Defendant could so egregiously violate the well-established laws, rules, and regulations governing the labeling, marketing, and sale of personal care products.

36.     At all relevant times, Defendant made and continues to make material misrepresentations regarding the Class Products.

37.     Defendant advertised, marketed, promoted, and sold the MI Products as containing specific ingredients when, in fact, they contained none of the claimed ingredients. Similarly, Defendant represented that the Class Products were made with NDCP Extracts developed using "patented technology" and were "Crafted with LOVE in Southern California." In truth, the Class Products did not contain NDCP Extracts, but instead used conventional ingredients commonly available to

---

[7] *See* https://rawsugarliving.com
[8] *See* https://www.amazon.com/stores/page/A8C89A1C-7734-4023-86B8-
3F57B0FEF2E1?ingress=0&visitId=680d03b6-4fdb-4e41-bac5-
ca0408307704&lp_query=raw%20sugar%20body%20wash&lp_slot=auto-sparkle-hsa-
tetris&store_ref=SB_A01606081H1FWW87SCHHV-
A05614851FFUZA8339B9N&ref_=sbx_be_s_sparkle_lsi4d_cta or https://shorturl.at/gkJwe
[9] *See* https://wmplp.com/news-article/wm-partners-announces-agreement-to-invest-to-raw-sugar
[10] *See* https://wmplp.com/about

other consumer products companies. Moreover, contrary to its representations, Defendant never patented the process purportedly used to create its NDCP Extracts. Defendant also failed to clearly and adequately disclose its use of foreign ingredients and components, despite making prominent U.S.-origin claims. These representations were false, unlawful, unfair, and deceptive—and they remain ongoing.

38.    Each consumer, including Plaintiff, was exposed to the same material misrepresentations, as substantially similar labels and/or marketing materials were used in connection with all Class Products sold—and currently being sold—throughout the United States, including within the State of California.

39.    Federal and state laws, rules, and regulations regarding the accurate labeling of the ingredients in consumer products are well-established and clearly defined. Specifically, under the FDCA, a cosmetic is considered misbranded if its labeling is false or misleading in any particular.

40.    Furthermore, consumer protection laws are designed to prohibit companies from engaging in false, unfair, deceptive, and misleading marketing practices—such as falsely advertising the use of "NDCP Extracts" or claiming nonexistent "patents"—in order to induce consumers to purchase their products.

41.    Additionally, federal and state laws, rules, and regulations regarding the use of "Made in the United States" claims— including any synonymous claims, whether express or implied—are well-established and clearly defined with respect to products and services as discussed herein.

42.    As a direct result of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased the Class Products based on false impressions and in reasonable reliance on Defendant's misrepresentations.

43.    As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the Defendant's

representations were accure, truthful and lawful. This includes initial and repeat purchases of the Class Products.

44.    Despite clearly established and well-defined federal and state laws, rules, and regulations—including consumer protection laws—governing the labeling, marketing, and sale of cosmetic products in the United States, Defendant falsely, unfairly, and deceptively advertised, marketed, and sold its products, including the Product purchased by Plaintiff, as further detailed herein.

45.    Had Plaintiff and other similarly situated consumers been aware that the labeling and marketing of the Class Products contained numerous false and deceptive misrepresentations, they would not have purchased the Class Products or would have paid less for them.

46.    As a result of Defendant's false, unfair, and deceptive statements and/or their failure to disclose the true contents of the Class Products, along with the other conduct described herein, Plaintiff and similarly situated consumers purchased hundreds of thousands of units of the Class Products across the United States, including in California, suffering, and continuing to suffer, harm, including the loss of money and/or property.

47.    Defendant's conduct regarding the labeling, marketing, and sale of the Class Products, as alleged herein, violates multiple federal and California laws, rules, and regulations, as detailed below.

48.    This action seeks, among other things, equitable and injunctive relief; public injunctive relief; restitution of all amounts unlawfully retained by Defendant; and disgorgement of all ill-gotten profits resulting from Defendant's alleged wrongdoing.

49.    Unless enjoined, Defendant's unfair, deceptive and unlawful conduct will continue into the future, and Plaintiff and Class members will continue to suffer harm.

//

# FACTUAL ALLEGATIONS

50.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

51.    At all relevant times, including as of the filing of this Complaint, Defendant has made material misrepresentations regarding the Class Products.

## A. False Ingredient Claims

52.    Defendant produces, markets, advertises and sells certain of its products, including the Product purchased by Plaintiff, as being made with certain ingredients claimed on the PDP of the products.

53.    For example, the Product purchased by Plaintiff is labeled and marketed as containing "Coconut + Agave + Sweet Almond *Milk*" (emphasis added), an express representation that the Product is made with and contains sweet almond milk.

54.    This claim appears clearly and conspicuously on the PDP of the Product. However, contrary to the "Sweet Almond Milk" representation on the PDP, the Product is not made with, nor does it contain, sweet almond "milk."

55.    Instead, it contains an inferior and less beneficial ingredient: sweet almond oil.

56.    Below is a non-exhaustive example of the Product's PDP as well as its ingredient list:



Water (Aqua), Sodium C14-16 Olefin Sulfonate, Cocamidopropyl Betaine, Dimethyl Lauramide/Myristamide, *Butyrospermum Parkii (Shea) Butter Extract, *Cocos Nucifera (Coconut) Oil, *Agave Americana Leaf Extract, *Simmondsia Chinensis (Jojoba) Seed Oil, **Prunus Amygdalus Dulcis (Sweet Almond) Oil**, *Aloe Barbadensis (Aloe Vera) Leaf Juice, *Macadamia Ternifolia Seed Oil, Polyquaternium-7, Guar Hydroxypropyltrimonium Chloride, Glycerin, Polysorbate 20, Citric Acid, Sodium Chloride, Phenoxyethanol, Sodium Benzoate, Potassium Sorbate, Fragrance (Parfum) *Certified Organic/Cold Pressed Extracts

57.     Almond milk is widely recognized for its higher macronutrient content and the resulting benefits compared to almond oil.[11]

58.     Additionally, almond milk is presumed to be more costly than almond oil. Regardless of price considerations, consumers did not receive what they reasonably

---

[11]   *See* https://web.archive.org/web/20241105222520/https://foodstruct.com/compare/almond-oil-vs-milk (Information showing almond milk contains more minerals, vitamins, protein and other nutrients than almond oil.)

expected, causing them financial harm.

59.    In addition to the absence of "Sweet Almond Milk" in the Product purchased by Plaintiff, Defendant exploited consumers' trust in product labeling—particularly claims made on PDPs—by prominently labeling and marketing the MI Products with bold, conspicuous statements regarding the inclusion of certain desirable ingredients.

60.    These representations appeared both in advertising and on the MI Products' PDPs, and were deliberately crafted to leverage consumers' trust, recognition, and preference for those ingredients—ingredients which, in truth, were not present in the MI Products.

61.    The non-exhaustive table below identifies ingredients that were claimed but absent from the MI Products, along with the corresponding substituted ingredient actually used.

| Product | Claimed Ingredient | Substituted Ingredient |
|---|---|---|
| The Moisture Smoothie Shampoo | Sweet Almond Milk | Sweet Almond Oil |
| Multi-Miracle Hair Mist | Coconut Milk | Coconut Oil |
| Mighty Curls Hair Masque | Papaya Butter | Papaya Fruit Extract |
| Healing Power Hair Masque | Coconut Milk | Coconut Oil |
| Kid's Strong + Shiny Leave-In Conditioning Cream | Oat Milk | Oat Kernal Extract |
| Kids Conditioning Detangler | Coconut Milk | Coconut Oil |
| Kids Conditioning Detangler | Oat Milk | Oat Kernal Flour |
| Simply Body Wash for Sensitive Skin | Coconut Milk | Coconut Oil |
| Moisture Loving Lotion | Rice Flower | Hydrolyzed Rice Protein |
| Eco Body Bar | Rice Flower | Rice Extract |
| Sugar Scrub | Raw Coconut | Coconut Oil |
| Daily Micro Scrub Salt Polish | Rice Flower | Rice Bran Water, Hydrolyzed Rice Protein |
| Daily Micro Scrub Salt Polish | Raw Coconut | Coconut Oil |
| Whipped Scrub for Sensitive Skin | Coconut Milk | Coconut Oil |
| Simply Hand Wash | Raw Coconut | Coconut Fruit Extract |
| Simply Hand Wash | Rice Flower | Rice Bran Water, Hydrolyzed Rice Protein |
| Lip Balm | Pineapple, Maqui Berry | No substituted ingredients |

| Lip Balm | Raw Coconut | Coconut Oil |
|---|---|---|
| Lip Balm | Almond Milk, Agave | No substituted ingredients |
| Lip Balm | Sugar | No substituted ingredients |

62.   A reasonable consumer expects that when a product explicitly lists an ingredient on its PDP and in its marketing, the product will not only contain the named ingredient but also provide the benefits associated with it.

63.   In the case of the MI Products, Defendant prominently features certain ingredients on the MI Products' PDPs and extensively incorporates it into their marketing.

64.   Below are non-exhaustive examples of the aforementioned representations appearing on the packaging and in the marketing of the MI Products, alongside their corresponding ingredient lists.



Water (Aqua), Sodium C14-16 Ole- Fin Sulfonate, Cocamidopropyl Betaine, Dimethyl Lauramide/Myristamide, *Butyrospermum Parkii (Shea) Butter Extract, * Cocos

Nucifera (Coconut) Oil, *Agave Americana Leaf Extract, * Simmondsia Chin- Ensis (Jojoba) Seed Oil, * **Prunus Amygdalus Dulcis (Sweet Almond) Oil**, * Aloe Barbadensis Leaf Juice, *Macadamia Ternifolia Seed Oil, Polyquaternium-7, Guar Hydroxypropyltrimonium Chloride, Glycerin, Polysorbate 20, Citric Acid, Sodium Chloride, Sodium Benzoate, Potassium Sorbate, Fragrance (Parfum) *Certified Organic/Cold Press



Purified Water (Aqua), Cetyl Alcohol, Stearyl Alcohol, Steartrimonium Chloride, Glycerin, Cetearyl Alcohol, Butyrospermum Parkii (Shea) Butter (Certified Organic/Cold Pressed Extracts), Olea Europaea (Olive) Fruit Oil (Certified Organic/Cold Pressed Extracts), Helianthus Annuus (Sunflower) Seed Oil, **Cocos Nucifera (Coconut) Fruit Oil** (Certified Organic/Cold Pressed Extracts), Musa Sapientum (Banana) Flower Extract (Certified Organic/Cold Pressed Extracts), Persea Gratissima (Avocado) Fruit Oil, Agave Americana Leaf Extract (Certified Organic/Cold Pressed Extracts), Tocopheryl Acetate (Vitamin E Oil), Panthenol (Pro Vitamin B5), Hydroxypropyl Methylcellulose, Glycol Stearate, Cetrimonium Chloride, Phenoxyethanol, Dehydroacetic Acid, Benzyl Alcohol, Citric Acid, Fragrance (Parfum).



*Carthamus Tinctorius (Safflower) Seed Oil, *Cera Alba (Beeswax), *Butyrospermum Parkii (Shea) Butter, *Cocos Nucifera (Coconut) Oil, Euphorbia Antisyphilitica (Candelilla) Wax, *Aloe Barbadensis (Aloe Vera) Leaf Juice, *Simmondsia Chinensis (Jojoba) Seed Oil, *Stevia Rebaudiana Extract, Tocopherol (Naturally Derived Vitamin E), *Natural Flavor *Certified Organic/Cold Pressed Extracts



Purified Water (Aqua),*Ricinus Communis (Castor) Seed Oil,*Olea Europaea (Extra Virgin Olive) Fruit Oil,*Musa Sapientum (Banana) Fruit Extract,***Cocos Nucifera (Coconut) Fruit Oil**,*Aloe Barbadensis (Aloe Vera) Leaf Juice,Tocopherol (Naturally Derived Vitamin E),*Glycerin (Vegetable Derived),Panthenol (Provitamin-B5),Hydroxypropyl Bis-Hydroxyethyldimonium Chloride,Polyquaternium-4, Dicetyldimonium Chloride,Tetrasodium Glutamate Diacetate,Phenoxyethanol,Benzoic Acid,Dehydroacetic Acid,Fragrance (Parfum),*Certified Organic/Cold Pressed Extracts

65.    In the case of the MI Products, the claimed ingredients are highly impactful and strategically placed on the PDP—the most prominent and visible location for a consumer packaged goods company to present a marketing claim.

66.    A product's PDP is the portion of the label that faces the consumer when the product is displayed on a store shelf or featured online, allowing the consumer to view key ingredients and marketing claims without turning the product around or

reviewing the ingredient list.

67.    It is standard industry practice for consumer packaged goods companies to place what they consider to be their most important and persuasive selling points on the PDP.

68.    In the case of the MI Products, Defendant's ingredient claims are set apart from other text and graphic elements on the PDP, enhancing their prominence and reinforcing Defendant's intent to convey that the MI Products contain those specific ingredients.

69.    The ingredient claims also appears in the main headline or product description on third-party resellers' websites where the MI Products are offered for sale, further reinforcing the centrality of the claimed ingredients to the marketing and perceived value of the MI Products.[12]

70.    Defendant's false and misleading representations were deliberately crafted to deceive consumers into believing that the MI Products actually contained the claimed ingredients, exploiting consumer trust in product labeling and marketing while significantly influencing their purchasing decisions. In reality, the MI Products contained none of the claimed ingredients whatsoever.

71.    Despite Defendant's prominent ingredient claims, the MI Products—including the Product purchased by Plaintiff—do not contain any of the represented ingredients. Instead, they either include no substitute at all or rely on inferior alternatives. Regardless of any purported raw material or ingredient value of these substitutes, consumers did not receive what they were promised—and therefore did not get what they paid for.

72.    Given Defendant's unlawful mislabeling and sale of misbranded MI Products, it is entirely plausible that the Class Products, including the MI Products,

---

[12] For illustrative examples of missing ingredient claims appearing in the headlines or product descriptions on the retailers' websites such as Target.com, Instacart.com and Walgreens.com, *see* ¶ 64, *supra*.

contain undisclosed ingredients or falsely purport to include ingredients they do not, in fact, contain. This information, however, remains exclusively within Defendant's possession and can only be verified through an examination of its manufacturing and quality records, which Defendant and its manufacturers are legally required to maintain under various applicable rules, regulations, and laws. Accordingly, Plaintiff cannot fully ascertain the extent of Defendant's mislabeling and misbranding without further discovery. Nevertheless, Defendant's disregard for applicable legal requirements is well established by the aforementioned non-exhaustive examples.

73.     Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

74.     Defendant's misleading and deceptive claims regarding the presence of certain ingredients in the MI Products mislead consumers into purchasing products that fail to meet their expectations. This deception results in financial harm and erodes consumer trust in product labeling. As a consequence, consumers—including Plaintiff—did not receive the ingredients or the associated benefits they were promised and paid for.

75.     On information and belief, Defendant either charged a premium for the MI Products compared to its competitors or gained a significant competitive advantage by misleading consumers into choosing its products over others based on false ingredient claims. Federal and California laws are specifically designed to protect consumers from such false, deceptive, misleading, and unlawful representations, as well as from predatory business practices that unfairly manipulate consumer choice.

**B. False "Nutrient Dense Cold Press Extracts" Claims and False "Patent" Claims**

76.     Defendant produces, markets, advertises, and sells its products—including the Product purchased by Plaintiff—using claims that they are made with "Cold Press Technology," contain "Nutrient Dense, Cold Press Extracts," utilize

"patented" technology, and similar representations. The term "Cold Press Technology" is prominently displayed on virtually every Class Product's packaging, while references to NDCP Extracts and "patented" processes are extensively featured on the Class Products' packaging and/or their marketing materials.

77.     Through these representations, Defendant expressly warrants to consumers that its products are manufactured using a unique or differentiated technology or process—purportedly setting them apart from comparable products and positioning them as premium or more beneficial. In truth, however, the Class Products are not made with any distinctive technology, processing, or ingredients.

78.     Consumers—including Plaintiff—increasingly seek out products marketed as being made with premium ingredients and distinctive processing methods, believing such products to be safer, healthier, and free from harsh or chemically intensive practices. In particular, consumers view "cold pressed" products as a cleaner, more natural alternative to conventional options that may rely on high heat or chemical extraction—processes believed to degrade ingredients and diminish their benefits.

79.     The rising demand for cold pressed products reflects a broader shift toward healthier lifestyles, environmental sustainability, and a desire to reduce exposure to harmful chemicals or degraded components.

80.     Methods of extracting juices and/or oils from fruits, vegetables, nuts, seeds and other plant products without the use of heat, such as cold pressing, are preferred by consumers. These processing methods increase the retention of heat sensitive nutrients, vitamin C for example.

81.     As a result, "cold pressed" claims have become a material factor in consumer purchasing decisions, leading individuals to select products they believe are more environmentally responsible, healthier, and more beneficial to their overall well-being.

82.    Aware of this consumer trend, Defendant sought to exploit it by marketing the Class Products not with vague or generic claims about "clean ingredients," but with highly specific and targeted representations—including claims of "Cold Press Technology," "Nutrient Dense Cold Press Extracts," and even a deliberately misleading assertion that the products involve process that was "patented" by Defendant.

83.    Products such as refrigerated, perishable cold pressed juices that are marketed as "cold pressed" are typically sold for direct consumption, without further heating or cooking. This is because exposure to heat can destroy or significantly reduce the nutritional and functional benefits associated with cold pressing, thereby rendering the method effectively meaningless. Due to these sensitivities—and the lower yields inherent in cold pressing—such products are generally sold at a premium compared to conventionally processed alternatives. Consumers willingly pay this premium based on the belief that they are receiving the full, unaltered benefits of genuine cold pressing.

84.    The terms "Cold Press Technology," NDCP Extracts, and "patented" convey to reasonable consumers that the ingredients and processes used in the Class Products are differentiated, premium, and produced in a manner that is less harsh than those used in comparable products. This false and deceptive marketing gives Defendant an unfair competitive advantage by positioning the Class Products as superior in the eyes of consumers, while simultaneously disadvantaging competing products that rely on truthful, non-misleading claims about their ingredients and manufacturing processes.

85.    A reasonable consumer understands that when purchasing a product—particularly a personal care product—that expressly or implicitly claims to be made with "cold pressed" ingredients, they are reducing their exposure to chemically extracted or heat-degraded ingredients. They also believe they are supporting the reduction of chemical use in the consumer goods industry, thereby contributing to

environmental sustainability.

86.    Furthermore, Defendant consistently markets the ingredients in the Class Products as "_nutrient dense_, cold press" (emphasis added), including on the packaging of the Product purchased by Plaintiff—despite the fact that key ingredients in many, if not all, of these products contain little to no meaningful nutrients, or no more than comparable ingredients used in competing products.

87.    Below are non-exhaustive examples of the aforementioned representation that Defendant used to promote the Class Products:







88.   Defendant deliberately crafted its deceptive "nutrient dense" and "cold press" representations to mislead consumers into believing that the Class Products

contained ingredients of higher quality and grade than they actually did. By exploiting consumers' trust in product labeling and marketing, Defendant unfairly manipulated purchasing decisions, inducing consumers to purchase its products under false pretenses and at the expense of competitors who relied on truthful and accurate representations.

89.    Despite their "nutrient dense" and "cold press" claims, the Class Products do not contain ingredients that are, in fact, "nutrient dense" or produced using true "cold press" methods — a reality made clear by Defendant's own description of the purported "cold press" technology.

90.    Defendant's website describes its "Cold Press Technology" as follows (emphasis added):[13]

> **WHAT IS THE COLD PRESSURE PROCESS AND HOW DOES COLD-PRESS WORK?**
>
> The cold press process is actually pretty simple. To "Cold Press" fruit means to put it through a hydraulic press. *The main difference of a hydraulic press is what happens after the fruit has been "juiced." Immediately after extraction, the juice is bottled and sealed in a large chamber of water with five times the amount of pressure you'd find in the ocean. No extra heat or oxygen is used in this process, meaning that little-to-no nutrients are lost*.

91.    The representations described in Defendant's text refer to a technology used for preserving fresh juice and food products—technology that has no relevance to the personal care products sold by Defendant. Defendant's reference to "what happens after fruit has been juiced" is entirely inapplicable to the ingredients used in the Class Products. In reality, Defendant's description precisely mirrors a relatively new food and beverage preservation method known as High Pressure

---

[13]    *See*    https://web.archive.org/web/20241105214907/https://rawsugarliving.com/blogs/raw-thoughts/why-is-coldpress-technology-so-good-for-you?_pos=1&_psq=cold+press+t&_ss=e&_v=1.0  or  https://shorturl.at/B3qOT (last accessed April 26, 2025)

Processing ("HPP").[14]

92.    HPP is a preservation and sterilization method that enables certain food products, such as cold-pressed juices, to be bottled and sold to consumers without the use of traditional thermal preservation techniques. HPP is significantly more expensive than conventional thermal processing and, due to its high cost and other practical limitations, would not be applied to products like those sold by Defendant.

93.    Defendant's false claims regarding its purported "Cold Press Technology" are not limited to its misleading description resembling HPP; rather, Defendant makes numerous other false and deceptive representations concerning this so-called technology, including, but not limited to, the following (emphasis added):[15]

**Why is Cold Press Technology® So Good for You?**

**DID YOU KNOW THAT RAW SUGAR LIVING WAS THE FIRST TO INTRODUCE COLD PRESS TECHNOLOGY® TO BEAUTY?**

Applying the same philosophy that goes into making your favorite Cold-Pressed juices, processing ingredients through Cold Press Technology® allows us to get the most out of the fresh and healthy fruits and superfoods that we pack into our products. It _locks in all the vitamins, nutrients and enzymes, and only releases them when they're applied onto your skin_.

There are a number of reasons why Cold Press Technology® is so beneficial to both your health and your skin. Here's a quick overview of why.

**FIRST, WHAT DOES COLD PRESS TECHNOLOGY® ACTUALLY MEAN?**

Cold pressing is a process that _allows the nutrients and vitamins of fruit or superfood to stay at their peak until you use them_. While cold pressing is more commonly discussed in relation to juicing, the same philosophy can be applied to beauty products.

---

[14] _See_ https://en.wikipedia.org/wiki/Pascalization (last accessed April 26, 2025)
[15] _See supra_, note 13.

*[Section Omitted, see ¶ 90]*

**COLD PRESS BENEFITS: WHAT YOU'LL LOVE ABOUT COLDPRESS TECHNOLOGY®**

Cold-pressing gives us direct access to the natural oils that are extracted directly from botanical and fruit sources. *This helps keep in their natural benefits* and gives power to everything that is pure, while remaining true to the source of the whole fruit. *This also helps us to create a product with* pure, rich essential oils, *vitamins, enzymes and nutrients that nourish and feed your skin*.

**WHAT DOES COLD PRESS DO FOR YOUR BODY?**

When used in beauty products, cold pressing has the potential to have *soothing and anti-inflammatory properties*, can *brighten and protect skin from sun damage*, and *maintain the barrier functions of your skin*. In short, *Cold Press Technology® keeps the good stuff in*.

**IS COLD PRESSED HEALTHIER?**

When it comes to Cold Press Technology® in the beauty industry, the cold pressing process helps *get the key vitamins, nutrients and enzymes out of the healthiest fruits and superfoods*. Plus, at Raw Sugar, we keep our products formulated without sulfates and vegan—so, in many ways, our *Cold Press Technology® has the ability to enhance your overall health and skin health*.

94.    Defendant's assertion that it was the "first to introduce" cold-pressed ingredients to the beauty industry is false, misleading, and deceptive. Defendant was founded in 2014; however, the use of cold-pressed ingredients—such as argan oil, olive oil, and coconut oil—has been widespread in the beauty and personal care industries for years prior to Defendant's formation. Numerous well-established brands incorporated cold-pressed oils and extracts into their products long before Defendant entered the market, rendering its claim demonstrably untrue.[16]

---

[16] *See* https://web.archive.org/web/20130115065807/https://store.nutiva.com/coconut-oil/ (As just one example of the use of cold pressed ingredients in 2013, in this case coconut oil, in the beauty and personal care industry before Raw Sugar's inception. "There is no comparison between Nutiva's *cold-pressed*, Organic extra-virgin coconut oil, with its light taste, pleasant

95.    Defendant's purported "Cold Press Technology" is a marketing fabrication incapable of "locking in" any meaningful levels of "vitamins, nutrients, and enzymes," as advertised. No credible evidence supports that Defendant's manufacturing processes or ingredient formulations are capable of delivering the claimed "timed release" of active compounds. Such sophisticated delivery systems exist only within clinically validated pharmaceutical frameworks—not through the cosmetic or ingredient processing methods employed by Defendant. Upon information and belief, Plaintiff further alleges that the Class Products, including the Product at issue, contain little, if any, measurable amounts of "vitamins, nutrients, and enzymes" derived from genuine "cold-pressed extracts."

96.    Moreover, Defendant's so-called "Cold Press Technology" does not, and cannot, "allow nutrients and vitamins...to stay at their peak until you use them," as represented. This claim is modeled on the HPP preservation process used in the food and beverage industry—specifically for fresh juices—not for personal care products. The technology described has no practical application to the Class Products, which are neither perishable nor preserved in a manner comparable to fresh food, rendering the representation false, misleading, and scientifically unfounded.

97.    Defendant further perpetuates its false and misleading representations by promoting unsupported health-related benefits attributed to its so-called "Cold Press Technology," including—but not limited to—claims that the products possess anti-inflammatory properties, as well as alleged skin-brightening and UV-protective effects. These claims are not supported by competent or reliable scientific evidence.

98.    In addition, Defendant falsely asserts that it has "patented" its "Cold Press

---

aroma, and pure white color, and industrialized coconut oil, with its bland taste, faint aroma, and off-white color." "Besides its nutritional value, pure coconut oil also makes a luscious and soothing _massage and body oil_ for dry and/or damaged skin." (emphasis added)).

KAZEROUNI
LAW GROUP, APC

Technology."[17] However, upon investigation, no such patent or patent application has been identified in the records of the United States Patent and Trademark Office, rendering this representation demonstrably false.

99.    Consumers reasonably rely on representations such as "patented" technology as indicators of innovation, exclusivity, and superior product quality. By falsely claiming that its "Cold Press Technology" is patented, Defendant creates the false impression that its processing methods are both proprietary and scientifically validated, thereby enhancing the perceived value and market differentiation of the Class Products. This misrepresentation is material to consumers' purchasing decisions, as it leads them to believe they are selecting products that incorporate unique, technologically advanced methods unavailable in competing offerings—when, in fact, no such patent protection or underlying scientific rigor exists.

100.    Defendant has manufactured, marketed, and sold its products using various iterations of packaging and advertising that promote its purported "Cold Press Technology," "Nutrient Dense Cold Press Extracts," and "patented" processes. The scope, timeline, and version control of these marketing claims and packaging variations are facts uniquely within Defendant's possession at this time. Accordingly, Plaintiff cannot currently allege the full extent of Defendant's

---

[17] *See, e.g.,* https://web.archive.org/web/20241105214652/https://rawsugarliving.com/blogs/raw-thoughts/what-is-cold-pressed-technology ("We love the benefits of Cold Pressed juices so much, that ***we've patented our own Cold Press Technology®*** to preserve, extract and deliver the purest, richest, most nutrient dense extracts to love your skin from the outside in."); https://web.archive.org/web/20241203032913/https://rawsugarliving.com/pages/sustainability ("Being a part of your self care is our passion ***so we patented our own Cold Press Technology®*** to preserve, extract and deliver the purest, richest, most nutrient dense extracts to love your skin from the outside in."); https://web.archive.org/web/20241203033608/https://rawsugarliving.com/pages/clean-ingredients ("...***We patented our own Cold Press Technology®*** to preserve, extract and deliver the purest, richest, most nutrient dense extracts to love your skin from the outside in."); https://web.archive.org/web/20241203034739/https://www.themplsegotist.com/news/2024/07/02/raw-sugar-living-debuts-first-ever-consumer-campaign-by-betty/ ("With many brands focusing on what they've taken out of the product and not what they've put in, ***Raw Sugar Living is highlighting its patented Cold Press Technology®*** that preserves the goodness of the natural ingredients in its products.") (emphasis added) (last accessed April 26, 2025).

---

misrepresentations without the benefit of discovery. Nonetheless, Defendant's blatant and willful disregard for truthful and accurate labeling, marketing, and advertising is already apparent from the above non-exhaustive examples.

101. Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

102. Defendant's misleading "nutrient dense" and "cold press" claims on the Class Products deceive consumers into purchasing products that fail to meet their expectations of gentle processing and high-quality ingredients, resulting in financial harm and eroding consumer trust in product labeling.

103. On information and belief, Defendant either charged a premium for the Class Products compared to its competitors or gained a competitive advantage by having the Class Products chosen over others based on false "nutrient dense," "cold press" and even "patented" claims. California laws are designed to protect consumers from such false representations and predatory conduct.

### C. False U.S. Origin Claims

104. Defendant produces, markets, advertises and sells all or nearly all of the Class Products, including the Product purchased by Plaintiff, as "Crafted with LOVE in Southern California," (emphasis in original) or some derivative thereof, without clear or adequate qualification.

105. Importantly, neither federal nor state law in the United States requires the use of the phrase "Made in USA" or any synonymous representation on the type of products sold by Defendant. In other words, such representations are entirely voluntary and serve marketing or product positioning purposes, rather than fulfilling any regulatory or legal requirement.

106. However, when a company such as Defendant elects to use such representations, their use is governed by the applicable laws and regulations set forth herein.

107. The MUSA Rule clearly defines the meaning of "Made in the United States,"

including synonymous representations, and sets forth the conditions under which such designations may be used without qualification.[18] Specifically, the Rule requires that clear and adequate disclosures be provided when a product contains, or is made with, ingredients or components that are not made or sourced in the United States.[19]

108.   Despite the clearly established and well-defined federal and stated laws, rules and regulations, including consumer protections laws, regarding "Made in the United States" claims, Defendant falsely, unfairly and deceptively advertised, marketed and sold its products, including the products purchased by Plaintiffs, as "Crafted with LOVE in Southern California" (hereinafter "Made in USA") without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

109.   Despite their unqualified "Made in USA" representations, the Class Products are made using ingredients and components that are neither domestically grown, sourced, nor produced.

110.   For the Class Products, Defendant prominently displays an unqualified claim on the labeling and packaging of each product stating: "Crafted with LOVE in Southern California." This representation—or a substantially similar one—is also featured prominently in the marketing and advertising of the Class Products, including on third-party reseller websites.

_____

[18] *See* 16 C.F.R. § 323.1(a) ("The term Made in the United States means **any unqualified representation,** express or implied, **that a product or service**, or a specified component thereof, **is of U.S. origin**, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "**crafted**" in the United States or in America, or any other unqualified U.S.-origin claim.") (emphasis added).

[19] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, **it is an unfair or deceptive act or practice** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), **to label any product as Made in the United States unless** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and **all or virtually all _ingredients or components_ of the product are made and sourced in the United States**. (emphasis added).

111.   Below are non-exhaustive examples of the aforementioned representation regarding the Class Products:[20]



[20] *See* https://www.kohls.com/product/prd-4608151/raw-sugar-living-sugar-scrub.jsp?color=Orange&prdPV=1&isClearance=false or https://shorturl.at/nGI3F; https://www.walgreens.com/store/c/raw-sugar-the-moisture-smoothie-shampoo-coconut---agave---sweet-almond-milk/ID=300426628-product or https://shorturl.at/kwlr7











112.   This representation is prominently displayed in the same location on the packaging of all Class Products or, in some cases, in another conspicuous location on the product packaging.

113.   As a result of the "Made in USA" representations on the Class Products packaging and in their advertising, online retailers have further propagated this

misrepresentation through their websites' product pictures and descriptions, in addition to continuing to sell the Class Products with unqualified "Made in USA" misrepresentations on their shelves, where applicable.[21]

114.   As a result of the unqualified U.S. origin claims on the Class Products' packaging, consumers have been misled for years, leading to both initial and repeat purchases of products they believed were made in the United States with ingredients and components sourced from the U.S.

115.   Despite the prominent and unqualified claim that the Class Products were "Made in USA," they are substantially made with foreign ingredients, a fact that is not properly disclosed on the label, as required by the MUSA Rule and California law.

116.   For example, the Product purchased by Plaintiff contains coconut oil, an ingredient that is not sourced from the United States.[22] Additionally, the Product contains shea butter extract, which is also not derived from U.S. sources.[23] Upon information and belief, the Product contains additional ingredients and components, that are also sourced from outside the United States.

117.   Defendant's Green Tea + Cucumber + Aloe Vera Sensitive Skin Simply Body Wash product contains shea butter extract, jojoba seed oil[24] and green tea extract[25], along with other ingredients and components which, upon information

---

[21] For illustrative examples of Defendant's "Made in USA" (or similar) claims appearing on third party retailers website sales pages, *see* ¶ 111, *supra*.

[22] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Coconut oil. According to the Food and Agriculture Organization of the United Nations, coconut oil is not produced in commercial quantities in the United States.)

[23] *See* https://en.wikipedia.org/wiki/Vitellaria ("The shea tree grows naturally in the wild in the dry savannah belt of West and South from Senegal in the west to Sudan and South Sudan in the east, and onto the foothills of the Ethiopian highlands. It occurs in 19 countries across the African continent, namely Benin, Burkina Faso, Cameroon, Central African Republic, Chad, Ethiopia, Ghana, Guinea Bissau, Ivory Coast, Mali, Niger, Nigeria, Senegal, Sierra Leone, South Sudan, Sudan, Togo, Uganda, Democratic Republic of the Congo, and Guinea.")

[24] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Jojoba seeds. According to the Food and Agriculture Organization of the United Nations, jojoba is not produced in commercial quantities in the United States.)

[25] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Tea leaves. According to

---

and belief, are not sourced from the United States. Despite this, its packaging prominently states "Crafted with LOVE in Southern California" without clear and adequate qualification.

118.   Defendant's Pineapple + Maqui Berry + Coconut Body Lotion contains shea butter extract, jojoba seed oil and maqui berry extract, ingredients sourced from outside the United States,[26] despite Defendant's unqualified representation that the product is "Made in USA." This claim appears prominently on the product's packaging and in its marketing. Upon information and belief, the product also contains additional ingredients and components that are not sourced from the United States, further rendering Defendant's representation unfair and deceptive.

119.   Numerous other products from Defendant make the same unqualified "Crafted with LOVE in Southern California" claims despite containing foreign ingredients. For example, Defendant's Men's 2-in-1 Shampoo & Conditioner, contain tea tree, which is not sourced from the United States,[27] yet this product makes the same unqualified "Crafted with LOVE in Southern California" representations as the other Class Products.

120.   Similarly, Defendant uses foreign coconut, green tea or both in numerous of its products including, but not limited to, Simply Hand Wash for Sensitive Skin, Whipped Scrub for Sensitive Skin, Eco Body Bar, The Moisture Smoothie Conditioner, Multi-Miracle Hair Mist, The Mighty Cream Leave In Conditioner, Mighty Curls Hair Masque, Kid's 2-in-1 Shampoo + Conditioner, Kid's Detangler,

---

the Food and Agriculture Organization of the United Nations, tea is not produced in commercial quantities in the United States.)

[26] *See* Lida Fuentes et al., *Patagonian Berries: Healthy Potential and the Path to Becoming Functional Foods*, 8 FOODS 289 (2019). (Geographic Distribution in Table 1: "Chile: from the Coquimbo to Aysén regions, including Juan Fernández Island (Latitude 31°–40°). Argentina: from Jujuy to Chubut provinces.")

[27] *See* https://en.wikipedia.org/wiki/Melaleuca_alternifolia ("*Endemic* to Australia, it occurs in southeast Queensland and the north coast and adjacent ranges of New South Wales where it grows along streams and on swampy flats, and is often the dominant species where it occurs.") (emphasis added)

Men's Body Wash and Men's Eco Body Bar. Yet all these products also make the same unqualified "Crafted with LOVE in Southern California" representation.

121.    By failing to disclose the use of foreign ingredients and components, Defendant has unfairly and deceptively misrepresented the Class Products as being of purely U.S. origin.

122.    Had Plaintiff and other consumers similarly situated been made aware that the Class Products contained a substantial amount of ingredients sourced from outside of the United States, they would not have purchased the Class Products.

123.    Some of the ingredients, components, and even packaging used by Defendant can be sourced either domestically or internationally—and since this information is exclusively known to Defendant at this time—Plaintiff cannot fully allege the extent of Defendant's unqualified "Made in USA" violations without further discovery. Nevertheless, Defendant's blatant and willful disregard for the laws discussed herein is well established by the aforementioned, non-exhaustive examples.

124.    Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

125.    Most consumers have limited awareness that products—along with their ingredients and components—labeled or marketed as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

126.    American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts.

127.    On information and belief, Defendant either charged a premium for the Class Products compared to its competitors or gained a competitive advantage by having the Class Products chosen over others based on false, unqualified "Made in USA"

claims. Federal rules and California laws are designed to protect consumers from such false representations and predatory conduct.

### FACTS SPECIFIC TO PLAINTIFF MARIA CORONA

128.   On or about April 29, 2024, while browsing hair care products at Albertsons in Fallbrook, California, Plaintiff observed Defendant's products available for purchase. One of the products available for sale was Raw Sugar's The Moisture Smoothie shampoo for dry hair (the "Product").

129.   Plaintiff reviewed the packaging of the Product, which, on its PDP, represented that it was made with "Cold Press Technology," contained "Nutrient Dense Cold Press Extracts," and included "Sweet Almond Milk."

130.   The Product was also labeled as being "Crafted with LOVE in Southern California" without any qualification, despite containing foreign ingredients in its formulation.

131.   Relying on the foregoing representations, as any reasonable consumer would, and intending to purchase a product that: (a) contained differentiated, premium ingredients such as "Cold Press Nutrient Dense Extracts"; (b) included "Sweet Almond Milk" as represented; and (c) was made in the United States with domestic ingredients—particularly important for a personal care product—Plaintiff purchased the Product for approximately $12.99 (excluding tax) from Albertsons for her personal use.

132.   Plaintiff's reliance on Defendant's representations was reasonable given the circumstances, as ordinary consumers are not experts in cosmetic product formulations or the true nature or origins of ingredients. They have no reason to doubt such claims or suspect that a manufacturer would deliberately misrepresent the contents of a product, especially when such claims are prominently displayed on the product's PDP, labeling, and in its marketing.

133.   For instance, when a consumer sees an explicit representation of an ingredient on a product's labeling and marketing, such as "sweet almond milk,"

they reasonably expect the product to contain that ingredient. A reasonable consumer would not expect the product to instead contain a different ingredient that only the producing company, and no one else, considers to be equivalent.

134. Additionally, consumers reasonably expect that prominently featured and differentiated ingredients and processes—such as "Nutrient Dense Cold Press Extracts" and "Cold Press Technology"—are, in fact, used in the product as represented. Any omission or misrepresentation concerning the presence or use of such ingredients or processes is deceptive, misleading, and unlawful.

135. Furthermore, Plaintiff's reliance on Defendant's unqualified "Crafted with LOVE in Southern California" representation was reasonable, as consumers are accustomed to seeing disclosures like "Made in USA with globally sourced ingredients" or similar qualified variations on product packaging and marketing—if and when such U.S. origin claims are made. When consumers encounter an unqualified "Made in USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

136. Defendant's representations regarding the Product, the MI Products and the Class Products were unlawful, unfair, deceptive, and misleading, as the Product: (a) did not contain "Sweet Almond Milk"; (b) was not made with "Cold Press Technology" or "Nutrient Dense Cold Pressed Extracts"; and (c) was actually made with and/or contained ingredients or components sourced, grown, or manufactured outside the United States.

137. Accordingly, Defendant is not entitled to lawfully make the claims of "Sweet Almond Milk," "Cold Press Technology," "Nutrient Dense Cold Pressed Extracts" and the unqualified "Crafted with LOVE in Southern California" claims that it made on and regarding the Product, the MI Products, and the Class Products.

138. Defendant's representations were material to Plaintiff's decision to purchase the Product.

139. Indeed, in deciding to purchase the Product, Plaintiff relied on the labeling,

marketing, and/or advertising prepared and approved by Defendant and its agents, as disseminated through the MI Products' packaging and marketing containing the misrepresentations alleged herein.

140.   Had Plaintiff known that the Product and the MI Products did not contain the ingredients claimed on their PDPs, such as "Sweet Almond Milk," and instead contained a substituted ingredient, she would not have purchased the Product.

141.   Additionally, had Plaintiff known that the Product and the Class Products were not actually made with "Cold Press Technology" and did not contain "Nutrient Dense Cold Pressed Extracts," she would not have purchased the Product.

142.   Furthermore, had Plaintiff known that the Product and the Class Products contained numerous foreign ingredients, she would not have purchased the Product.

143.   In other words, Plaintiff would not have purchased the Product but for the "Sweet Almond Milk", "Cold Press Technology," "Nutrient Dense Cold Press Extracts," and unqualified "Crafted with LOVE in Southern California" claims on the Product, the MI Products and the Class Products.

144.   As a result, Plaintiff was harmed because Defendant took Plaintiff's money due to its unlawful, false, unfair, and deceptive misrepresentations on the MI Products and the Class Products, including the Product.

145.   Each time Plaintiff and putative Class members purchased MI Products and/or Class Products, they relied on Defendant's representations in their purchasing decisions, as is typical of most U.S. consumers.

146.   Consequently, Plaintiff and other similarly situated consumers were deceived by Defendant's unlawful actions.

147.   Plaintiff believed, at the time of purchase, that the Product was of superior quality and that she was supporting U.S. jobs, the U.S. economy, the environment, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients, rather than ingredients sourced, grown, or made outside the United States.

148.   Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

149.   Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy. This concern is especially significant for products intended for topical use, such as personal care products.

150.   Additionally, foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin counterparts.

151.   False, unqualified, unfair and deceptive representations that products are "Made in USA" reduce overall customer satisfaction compared to if such products were genuinely made in the U.S. using ingredients and components sourced, grown, or made domestically.

152.   The Class Products, including the Product purchased by Plaintiff, contain foreign ingredients and are not worth the purchase price paid by Plaintiff and putative Class members.

153.   The precise amount of damages will be proven at the time of trial.

154.   Plaintiff and Class members suffered harm as a direct result of Defendant's false, unlawful, unfair, and deceptive representations, including but not limited to its misleading "Sweet Almond Milk" claims, "Cold Press Technology" claims, "Nutrient Dense Cold Pressed Extracts" claims, and unqualified "Crafted with LOVE in Southern California" claims.

155.   This false, unlawful, unfair, and deceptive advertising of the Class Products by Defendant presents an ongoing threat to consumers, as Defendant's conduct continues to this day.

//

//

## CLASS ALLEGATIONS

156.   Plaintiff brings this action on behalf of herself and all others similarly situated.

157.   Plaintiff is a member of and seeks to represent a Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who, within four years prior to the filing of this Complaint, purchased one or more of the MI Products that were marketed or represented as containing certain ingredients—whether on the product packaging or in marketing materials—but that did not contain the purported ingredient.

158.   Plaintiff is a member of and seeks to represent a Sub-Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who purchased one or more of the Class Products, within four years prior to the filing of this Complaint, that were marketed or represented as being made with "Cold Press Technology," "Nutrient Dense Cold Press Extracts," "patented," and/or "Made in USA" or any derivative thereof on the product or in its marketing materials.

159.   The Class and Sub-Class shall be referred to herein jointly as the "Class."

160.   Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

161.   Plaintiff reserves the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

162.  <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals within California.

163.  <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

• The nature, scope, and operations of the wrongful practices of Defendant;

• Whether the MI Products contained the ingredients they claimed they did;

• Whether the Class Products are or have been made with "Cold Press Technology" or "Nutrient Dense Cold Press Extracts";

• Whether any ingredient or process used to produce the "Class Products" is patented by Defendant;

• Whether the Class Products are or have been represented as being of U.S. origin without clear and adequate qualification;

• Whether Defendant negligently or intentionally misrepresented or omitted the fact that the Class Products, including the Product purchased by Plaintiff and other Class members, were sold illegally in California;

• Whether Defendant knew or should have known that its business practices were unfair and/or unlawful;

• Whether Defendant's conduct violated the CLRA;

• Whether Defendant's conduct violated the FAL;

• Whether Defendant's conduct was "unlawful" as that term is defined in the UCL;

- Whether Defendant's conduct was "unfair" as that term is defined in the UCL;

- Whether Defendant's conduct was "fraudulent" as that term is defined in the UCL;

- Whether Defendant's conduct was "unfair, deceptive, untrue or misleading" as those terms are defined in the UCL

- Whether Defendant was unjustly enriched by its unlawful, unfair and deceptive business practices;

- Whether Defendant breached express warranties to Plaintiff and members of the Class;

- Whether Defendant negligently or intentionally misrepresented its products;

- Whether Plaintiff and members of the Class suffered monetary damages as a result of Defendant's conduct and, if so, the appropriate amount of damages; and

- Whether Plaintiff and members of the Class are entitled to injunctive relief, including public injunctive relief.

164. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class. Plaintiff and all members of the Class have been harmed by Defendant's wrongful practices. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories. Specifically, Plaintiff purchased one or more of the Class Products, including the MI Products, from Defendant that were labeled, represented and/or advertised as: (1) containing "Sweet Almond Milk" and providing its associated benefits; (2) being made with "Cold Press Technology," "Nutrient Dense Cold Press Extracts" and/or "patented" technology; and/or (3) being "Made in USA" or a similar representation, without clear and adequate qualification.

165. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent

and protect the interests of members of the Class. Plaintiff's counsel are competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

166.    <u>Predominance</u>: Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class, in that Plaintiff and members of the Class were induced to purchase the Class Products. The common issues arising from Defendant's conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

167.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

168.    Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful, unfair and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to advertise, market, label, promote and package the Class Products in an unlawful, unfair,

deceptive and misleading manner, and members of the Class will continue to be deceived, misled, harmed, and denied their rights under California law.

169.   Defendant has acted on grounds that apply generally to the Class, so that Class certification is appropriate.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Violations of the Consumer Legal Remedies Act ("CLRA")
### (Cal. Civ. Code § 1750, *et seq.*)

170.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

171.   California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

172.   The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia,* that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections.

173.   Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of skincare products to consumers.

174.   Plaintiff and the Class members are not sophisticated experts with independent knowledge of product labeling, marketing practices and/or ingredient sourcing.

175.   Plaintiff and the Class members are California consumers who purchased the Class Products for personal, family or household purposes.

176.   Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

177.   The Class Products that Plaintiff and other Class members purchased from Defendant constitute "goods" as defined pursuant to Civil Code Section 1761(a).

178.   Plaintiff, and the Class members, are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

179.   Plaintiff's and the Class members' purchases of Defendant's products constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

180.   Civil Code Section 1770(a)(2), (4), (5), (7) and (9) of the CLRA provides that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;
> (4) [u]sing deceptive representations or designations of geographic origin in connection with goods or services;
> (5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;
> (7) [r]epresenting that goods or services are of a particular standard, quality, or grade…; [and]
> (9) [a]dvertising goods or services with intent not to sell them as advertised.

181.   Defendant violated Civil Code Section 1770(a)(2), (5), (7), and (9) by labeling, marketing and representing the MI Products as containing specific ingredients, such as Sweet Almond Milk in the Product purchased by Plaintiff. In reality, neither the Product nor the MI Products contained Sweet Almond Milk or

other claimed ingredients, and they were falsely, deceptively, and unlawfully labeled in a manner that led consumers, including Plaintiff, to believe they did.

182.    Additionally, Defendant violated Civil Code Section 1770(a)(2), (5), (7), and (9) by marketing and representing the Class Products as being made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," despite the fact that these representations are false and misleading, as the Products are not processed using any such patented technology and do not contain the claimed "Nutrient Dense Cold Press Extracts." Defendant further violated Civil Code Section 1770(a)(2), (4), (5), (7), and (9) by falsely marketing and representing the Class Products as "Made in USA" without qualification, even though they contain ingredients and/or components that are sourced, grown, or manufactured outside the United States.

183.    Plaintiff further alleges that the Defendant committed these acts with full awareness of the harm it would cause and engaged in such unfair and deceptive conduct despite this knowledge.

184.    Defendant knew or should have known that its representations about the Class Products, as described herein, violated federal regulations and state laws, including consumer protection laws, and that these statements would be relied upon by Plaintiff and Class members.

185.    As a direct and proximate result of Defendant's violations of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiff and each Class member have suffered harm by paying for the Class Products, which they would not have purchased had they known the products were unlawfully, falsely, unfairly, and deceptively labeled and/or marketed.

186.    Plaintiff and the Class suffered monetary harm as a result of Defendant's conduct because: (a) they would not have purchased the Class Products on the same terms had it not been for Defendant's unlawful, unfair, and deceptive actions as set forth herein; and/or (b) they paid a price premium for the Class Products or chose

them over competing products due to Defendant's marketing misrepresentations and deceptive labeling, as discussed herein.

187.    Plaintiff was therefore harmed because her money was taken by Defendant as a result of Defendant's false, unlawful, unfair, and deceptive misrepresentations regarding the Class Products. These unlawful actions included misrepresenting the contents of the MI Products, as well as the true nature and origin of the Class Products, including their ingredients.

188. Plaintiff and Class members reasonably relied upon Defendant's representations regarding the Class Products, and Plaintiff and the Class reasonably expected that the Class Products would not be unlawfully labeled or marketed in a unfair, deceptive and misleading manner.

189.    Thus, Plaintiff and the Class reasonably relied to their detriment on Defendant's unlawful, unfair, deceptive and misleading representations.

190.    Pursuant to California Civil Code § 1782(a), on or about December 3, 2024 Plaintiff sent Defendant a notice and demand for corrective action (the "CLRA Demand") via certified mail, informing Defendant of its violations of the CLRA and demanding that it cease and desist from such violations, as well as make full restitution by refunding all monies received in connection therewith.

191.    As the alleged violations were not cured by Defendant within 30 days of the CLRA Demand, Plaintiff, on behalf of herself and the Class, seeks damages and attorneys' fees pursuant to California Civil Code § 1782(d) against Defendant Raw Sugar, LLC. Plaintiff reserves the right to amend the Complaint under § 1782(d) to seek damages and attorneys' fees against Defendant Sugar Buyer, LLC.

192.    As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

193.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff and the putative Class are entitled to, and hereby seek, injunctive relief to prohibit such conduct in the future, as well as damages agsinst Defendant Raw Sugar, LLC.

194.    Attached hereto as **Exhibit B** is a sworn declaration from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

**SECOND CAUSE OF ACTION**
**Violations of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

195.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

196.    Plaintiff bring this claim individually and on behalf of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

197.    Plaintiff and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

198.    California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

199.    "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

200.    The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

201.    Through the conduct alleged in detail above and herein, Defendant engaged in unlawful, unfair, deceptive and/or fraudulent business practices in violation of Bus. & Prof. Code § 17200, *et seq.*

### A. *"Unlawful" Prong*

202. Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq.*

203. Defendant violated federal and California law by falsely advertising, marketing, labeling, and selling the MI Products as containing Sweet Almond Milk and other specific ingredients when they did not. Defendant also violated federal and California law by falsely advertising, marketing, labeling, and selling the Class Products as being made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," and as "Made in USA," without disclosing that the products are not processed using any patented or cold press technology, do not contain the claimed nutrient dense cold press extracts, and include ingredients and components sourced from outside the United States.

204. Specifically, by manufacturing, distributing, and/or marketing the Class Products with false, unlawful, unfair and deceptive claims, Defendant violates the FDCA, 21 U.S.C. § 362; Cal. Health & Safety Code §§ 111730, 111760, 111765, 111770; California's CLRA, Civil Code § 1750, *et seq.*; California's Made in USA Statute, Bus. & Prof. Code §§ 17533.7; and/or the federal Made in USA Labeling Rule, 16 C.F.R. Part 323.

205. Defendant falsely, unlawfully, unfairly, and deceptively represents that the MI Products contain Sweet Almond Milk and other specific ingredients when, in fact, they do not. Instead, Defendant substitutes non-equivalent ingredients.

206. Furthermore, Defendant falsely, unfairly, and deceptively represents that the Class Products are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," when, in fact, the products are not processed using any such patented or cold press technology and do not contain the claimed extracts. Key ingredients in the Class Products are not cold pressed or specially processed in any materially different way from those used in competing products.

207.   Additionally, Defendant falsely, unfairly and deceptively represents that the Class Products are "Made in USA" without clear and adequate qualification, despite containing ingredients and/or components that are sourced, grown, or manufactured in foreign countries.

208.   Aside from the unlawful conduct described herein, Defendant has other reasonably available alternatives to advance its business interests, such as accurately, truthfully, and lawfully marketing, labeling, and selling the Class Products.

209.   Instead, Defendant deliberately and deceptively misled consumers through unlawful and unfair practices for its own economic gain.

210.   Plaintiff and Class members reserve the right to allege additional violations of law that constitute unlawful business practices or acts, as such conduct is ongoing and continues to this day.

### B. *"Unfair" Prong*

211.   Defendant has engaged in acts of unfair competition prohibited by Bus. & Prof. Code § 17200, *et seq*.

212.   Defendant engaged in a pattern of "unfair" business practices that violate both the letter and the intent of the statutes. Defendant's conduct threatens an incipient violation of the law or violates the policy and spirit of the law by manufacturing, distributing, and/or marketing its products with false, unfair and deceptive claims.

213.   The utility of such conduct, if any, is vastly outweighed by the harm it inflicts, particularly through the manufacturing, distribution, and/or marketing of the MI Products and the Class Products by means of: (a) false representations that they contain specific ingredients, such as Sweet Almond Milk, when, in fact, they do not; (b) misleading claims that the products are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," despite no such technology being used and the extracts not being present; and/or (c) unqualified, unfair, and

deceptive representations that the products are "Made in USA," despite the inclusion of foreign-sourced ingredients and components.

214. As a result of Defendant's conduct: (1) the injury to consumers was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was one that consumers could not have reasonably avoided.

215. Without limitation, Defendant's knowing mislabeling and false, unlawful marketing of the Class Products constitute unlawful, unfair, and deceptive business practices, misleading consumers into believing they are purchasing products that: (a) contain specific premium ingredients, such as Sweet Almond Milk, when they do not; (b) are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," when no such technology is used and the extracts are not present; and/or (c) are "Made in USA" using exclusively domestic ingredients and components, despite containing foreign-sourced materials.

216. Plaintiff could not have reasonably avoided the resulting injury.

217. Plaintiff reserves the right to allege additional conduct that constitutes further unfair business acts or practices.

### C. "Fraudulent" Prong

218. Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that the MI Products and the Class Products: (a) contain specific premium ingredients, such as Sweet Almond Milk; (b) are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts"; and/or (c) are "Made in USA."

219. Specifically, the MI Products are falsely labeled and marketed as containing certain ingredients—such as Sweet Almond Milk in the Product purchased by Plaintiff—when, in fact, they contain none of the claimed ingredients whatsoever.

220. Defendant also falsely represents the Class Products as being made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts,"

when in fact the products are not processed using any such technology and do not contain the claimed extracts.

221.   Additionally, the Class Products are falsely represented as "Made in USA" without clear and adequate qualification, despite the fact that they contain foreign sourced, grown or manufactured ingredients and/or components.

222.   Relying on Defendant's misrepresentations, Plaintiff purchased the Class Products.

223.   Like Plaintiff, Class members purchased the Class Products in reliance on Defendant's misrepresentations.

224.   Plaintiff and the Class are not sophisticated experts in cosmetic marketing practices, product labeling, ingredient sourcing, or the regulations governing the Class Products.

225.   Plaintiff and members of the putative Class acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were accurate, truthful and lawful.

226.   Plaintiff reserves the right to allege additional conduct that constitutes further fraudulent business acts or practices.

### D. *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

227.   Defendant's labeling, marketing, and advertising is unfair, deceptive, untrue, and misleading, as it misleads consumers into believing that the MI Products and the Class Products: (a) contain specific premium ingredients, such as Sweet Almond Milk, when in fact they do not; (b) are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," when no such technology is used and the extracts are not present; and/or (c) are "Made in USA" using exclusively domestic ingredients and components, despite the inclusion of foreign-sourced materials.

228.   Plaintiff, as a reasonable consumer, and the public were likely to be, and in fact were, deceived and misled by Defendant's labeling and marketing. They

reasonably interpreted Defendant's representations according to their ordinary meaning—that the MI Products and the Class Products: (a) contain specific ingredients, such as Sweet Almond Milk; (b) are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts"; and/or (c) are "Made in USA" using domestic ingredients and components.

229.    Plaintiff and the Class are not sophisticated experts in cosmetic marketing practices, product labeling, cosmetic formulations or production, ingredient processing and sourcing, or the regulations governing the Class Products. They acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were accurate, truthful and lawful.

230.    Plaintiff and the Class lost money or property as a result of Defendant's UCL violations because, at a minimum: (a) they would not have purchased the Class Products on the same terms had they known the true facts about Defendant's representations; (b) they paid a price premium for the Class Products due to Defendant's alleged misrepresentations; and/or (c) the chose Class Products over the products of Defendant's competitors who made accurate, truthful and lawful representations about their products.

231.    Defendant's alleged unlawful, unfair, and deceptive business practices, along with their unfair, deceptive, untrue, or misleading advertising, present a continuing threat to the public as Defendant continues to engage in unlawful conduct that harms consumers.

232.    Such acts and omissions by Defendant are unlawful, unfair, and/or deceptive, constituting violations of Business & Professions Code §§ 17200, *et seq*. Plaintiff reserves the right to identify additional violations by Defendant as may be uncovered through discovery.

233.    As a direct and proximate result of the acts and representations described above, Defendant has received and continues to receive unearned commercial benefits at the expense of its competitors and the public.

234.   As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant has been, and will continue to be, enriched by ill-gotten gains from customers, including Plaintiff, who unwittingly provided money based on Defendant's misrepresentations.

235.   Plaintiff was harmed because Defendant took Plaintiff's money through unlawful, false, unfair, and deceptive representations made regarding the Class Products.

236.   The conduct of Defendant, as described above, demonstrates the need for injunctive relief to restrain such acts of unfair competition pursuant to California Business and Professions Code. Unless enjoined by the court, Defendant will retain the ability to, and may, continue engaging in unfair and deceptive competition and misleading marketing. As a result, Plaintiff and the Class are entitled to both injunctive and monetary relief.

237.   Plaintiff would like to purchase the Class Products again but cannot be certain she will not be misled in the future unless and until Defendant makes the appropriate changes to the labeling and marketing of its Class Products, as requested herein.

238.   Pursuant to Bus. and Prof. Code § 17203, Plaintiff and the proposed Class are entitled to, and hereby seek, injunctive relief to prevent Defendant from continuing the conduct in question.

239.   Additionally, Plaintiff seeks public injunctive relief to prevent Defendant from marketing and selling products as: (a) containing specific ingredients, such as Sweet Almond Milk, when they do not; (b) made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," when no such technology is used and the claimed extracts are not present; and/or (c) "Made in USA" (or similar language) without clear and proper qualification.

240.   In prosecuting this action to enforce important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

### THIRD CAUSE OF ACTION
### Violations of California's False Advertising Law ("FAL")
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

241.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

242.  California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

243.  Defendant's material misrepresentations and omissions, as alleged herein, violate Bus. & Prof. Code § 17500, et seq. Defendant knew or should have known that these misrepresentations and omissions were false, unlawful, unfair, deceptive, and misleading. This includes, but is not limited to, the representations that: (a) the MI Products contain Sweet Almond Milk and other specific ingredients when they, in fact, do not; (b) the Class Products are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," when they are not; and (c) the Class Products are "Made in USA" despite containing foreign-grown, sourced, or manufactured ingredients and components.

244.  Plaintiff and the Class suffered tangible, concrete injuries as a result of Defendant's actions, as set forth herein, because they purchased the Class Products in reliance on Defendant's misrepresentations.

245.  As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and members of the Class are entitled to injunctive relief, equitable relief, and restitution.

246.    Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose the misrepresentations and request an order awarding Plaintiff restitution for the money wrongfully acquired by Defendant through those misrepresentations.

247.    Additionally, Plaintiff and the members of the Class seek an order requiring Defendant to pay attorneys' fees pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

248.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

249.    Defendant represented to Plaintiff and similarly situated consumers, through its labeling, advertising, and marketing, that: (a) the MI Products contain specific ingredients, such as Sweet Almond Milk, when in fact they do not; (b) the Class Products are made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," when no such technology is used and the extracts are not present; and (c) the Class Products are "Made in USA" without any qualification or disclosure of the inclusion of foreign ingredients and components.

250.    Defendant's representations regarding the contents of the MI Products, the purported use of "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts" in the Class Products, and the unqualified U.S. origin of the Class Products constitute affirmations of fact.

251.    Defendant's explicit claims that the MI Products contain certain ingredients, for example Sweet Almond Milk, as well as Defendant's representations that the Class Products are made with "patented" "Cold Press Technology," "Nutrient Dense Cold Press Extracts," and are "Made in USA," directly pertain to the nature and composition of the products. These representations form a fundamental part of

the bargain between Defendant and purchasers, influencing consumer purchasing decisions and expectations.

252.   Defendant's statements—prominently featured on the labeling and marketing of the Class Products, including on the PDPs of the MI Products and in related marketing materials—constitute express warranties concerning the nature, composition, and origin of the products' ingredients.

253.   Relying on these express warranties, Plaintiff and Class members purchased the Class Products, believing these warranties.

254.   Defendant breached its express warranties by falsely representing that the MI Products contained certain claimed ingredients—such as Sweet Almond Milk—when, in fact, they did not. Additionally, Defendant breached its express warranties by representing that the Class Products were made with "patented" "Cold Press Technology" and "Nutrient Dense Cold Press Extracts," and were "Made in USA," when, in reality, the products were not processed using any such technology, did not contain the claimed extracts, and included numerous foreign-sourced ingredients and components.

255.   As a result of Defendant's breach, Plaintiff and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products or the difference between their actual value and the value they would have held if Defendant's representations regarding the Class Products had been accurate, truthful, and lawful.

256.   Plaintiff and Class members did not receive the benefit of their bargain and sustained additional injuries, as alleged herein.

257.   Had Plaintiff and Class members known the true nature of the Class Products, they either would not have purchased the products or would not have paid the price Defendant charged.

258.   Defendant's misrepresentations were a substantial factor in causing Plaintiff and the Class economic harm.

# FIFTH CAUSE OF ACTION
## Unjust Enrichment

259.   Plaintiff pleads this unjust enrichment cause of action in the alternative to contract-based claims.

260.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

261.   Under California law, the elements of unjust enrichment are the receipt of a benefit and the unjust retention of that benefit at the expense of another.

262.   Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendant by purchasing the Class Products, which Defendant misrepresented with respect to their ingredients, processing methods, and origin.

263.   Plaintiff and members of the Class allege that Defendant owes them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

264.   An undue advantage was taken of Plaintiff's and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendant had no legal right.

265.   Defendant is therefore indebted to Plaintiff and members of the Class in a specific sum—the amount of money each paid for the Class Products, which Defendant should not retain in equity and good conscience.

266.   Defendant is therefore liable to Plaintiff and members of the Class for the amount of unjust enrichment.

267.   Defendant's retention of any benefit, whether directly or indirectly collected from Plaintiff and members of the Class, violates principles of justice, equity, and good conscience.

268.   As a result, Defendant has been and continues to be unjustly enriched.

269.   Plaintiff and the Class are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be

required to disgorge to Plaintiff and members of the Class the benefits it has unjustly received.

270.    Defendant accepted and retained such benefits with knowledge that Plaintiff's and members of the Class's rights were being violated for financial gain. Defendant has been unjustly enriched by retaining the revenues and profits obtained from Plaintiff and members of the Class, and such retention under these circumstances is both unjust and inequitable.

271.    As a direct and proximate result of Defendant's unlawful practices and the retention of monies paid by Plaintiff and members of the Class, Plaintiff and the Class have suffered concrete harm and injury.

272.    Defendant's retention of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

273.    Plaintiff and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant, in a manner to be determined by this Court.

### SIXTH CAUSE OF ACTION
**Negligent Misrepresentation**

274.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

275.    Defendant represented to the public, including Plaintiff and the Class, through its marketing, advertising, labeling, and other means, that: (a) the MI Products contain specific ingredients, such as Sweet Almond Milk; and (b) the Class Products are made with "patented" "Cold Press Technology," "Nutrient Dense Cold Press Extracts," and are "Made in USA," without any qualification

276.    . These representations are false and misleading because: (a) the MI Products do not contain Sweet Almond Milk or other claimed ingredients; and (b) the Class Products are not processed using any such patented or cold press technology, do not

contain the claimed extracts, and include ingredients and components sourced from outside the United States.

277.   Plaintiff alleges that Defendant made these negligent, false and deceptive representations with the intent to induce the public, including Plaintiff and the putative Class members, to purchase the Class Products, including the MI Products.

278.   Plaintiff and other similarly situated individuals saw, believed, and relied upon Defendant's negligent, false, unfair, and deceptive misrepresentations, and purchased the Class Products as a result of this reliance.

279.   At all relevant times, Defendant made the negligent, false, unfair, and deceptive misrepresentations alleged herein, knowing or reasonably having known that such representations were unlawful, unfair, deceptive, inaccurate, and misleading.

280.   As a direct and proximate result of Defendant's negligent, false, unfair, and deceptive misrepresentations, Plaintiff and similarly situated consumers were induced to purchase the Class Products, purchase more of them, pay a higher price, or choose them over competitors' products.

281.   Defendant's unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial for the Class Period.

### SEVENTH CAUSE OF ACTION
**Intentional Misrepresentation**

282.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

283.   Defendant knowingly and intentionally represented to the public, including Plaintiff and the Class, through its marketing, advertising, labeling, and other means, that: (a) the MI Products contain specific ingredients, such as Sweet Almond Milk; and (b) the Class Products are made with "patented" "Cold Press Technology," "Nutrient Dense Cold Press Extracts," and are "Made in USA,"

without any qualification. These representations are false and misleading because: (a) the MI Products do not contain Sweet Almond Milk or other claimed ingredients; and (b) the Class Products are not processed using any such patented or cold press technology, do not contain the claimed extracts, and incorporate ingredients and components sourced from outside the United States.

284.   Defendant knew its representations were false because it maintains full control over the formulation and manufacturing of the Class Products.

285.   Defendant acted intentionally by willfully and purposefully disseminating misrepresentations about the Class Products through labeling, online and offline marketing, advertising, and social media.

286.   However, as described above, Defendant's representations regarding the Class Products are false, unlawful, unfair, deceptive and/or misleading.

287.   Defendant knew that its representations regarding the Class Products were false, unlawful, unfair, deceptive, and/or misleading, yet continued to make such representations over a period of years.

288.   Defendant further knew that retailers were marketing the Class Products in a false or misleading manner, as Defendant designed, manufactured, and affixed the product labeling to the Class Products before supplying them to retailers. Additionally, Defendant provided retailers with marketing materials that contained its false and misleading representations, thereby perpetuating the deception.

289.   Plaintiff and the putative Class members saw, believed, and relied on Defendant's misrepresentations when deciding to purchase the Class Products.

290.   As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members suffered damages in an amount to be determined at trial.

291.   By engaging in the acts described above, Plaintiff and the putative Class are entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;
- An Order declaring that Defendant's conduct violated the CLRA, California Civil Code §§ 1750, *et seq.*, and awarding injunctive relief pursuant to Cal. Civ. Code § 1780(a) and (b);
- An Order declaring that Defendant's conduct violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; and awarding injunctive relief pursuant to Bus. & Prof. Code § 17203;
- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;
- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains, compelling Defendant to pay restitution to Plaintiff and all members of the Class, and to restore to Plaintiff and Class members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive; in violation of laws, statutes, or regulations; or constituting unfair competition, along with pre- and post-judgment interest thereon;
- For pre and post-judgment interest on all amounts awarded;
- For an order of restitution and all other forms of equitable monetary relief, as pleaded, including awarding such relief pursuant to Bus. & Prof. Code § 17535; and/or Bus. & Prof. Code § 17203;

- Actual damages under California Civil Code § 1780(a) against Defendant Raw Sugar, LLC;

- For public injunctive relief as pleaded or as the Court may deem proper;

- That Defendant be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;

- Punitive damages including under California Civil Code § 1780(a) and/or Cal. Civ. Code § 3294;

- General and compensatory damages in an amount to be determined at trial;

- That Plaintiff and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5 and/or California Civil Code § 1780; and

- That Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

292. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: May 13, 2025                           Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:  /s/ *Abbas Kazerounian*
Abbas Kazerounian, Esq.
*ATTORNEYS FOR PLAINTIFF*